UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TYQUAN STEWART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:16-CV-138-TLS |
| | ) |
| PARKVIEW HOSPITAL, INC., and | ) |
| LAKISHA HOUSTON, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter comes before the Court on a Motion for Summary Judgment [ECF No. 43] filed by Defendants Parkview Hospital, Inc. and Lakisha Houston ("the Defendants"). The Plaintiff, Tyquan Stewart, filed his Third Amended Complaint against the Defendants on November 23, 2016 [ECF No. 28], alleging violations of the Americans with Disabilities Act, Title III ("the ADA"), the Emergency Medical Treatment and Active Labor Act ("the EMTALA"), negligence, and negligent infliction of emotional distress. On August 25, 2017, the Defendants filed a Motion for Summary Judgment [ECF No. 43] as to the Plaintiff's claims under the ADA and EMTALA and his negligence claim. The Plaintiff responded on September 13, 2017 [ECF No. 45], and the Defendants replied [ECF No. 48] on September 26, 2017. This matter is now fully briefed and ripe for review.

**FACTUAL BACKGROUND**

The Plaintiff is a thirty-six-year-old African-American male suffering from PTSD, schizophrenia, and depression. Parkview Behavioral Health ("PBH") is an inpatient and

outpatient psychiatric hospital located approximately one mile from Parkview Randallia Hospital. PBH does not have an Emergency Department, nor does it provide twenty-four-hour emergent medical care. Patients who present to PBH requiring emergent psychiatric care are evaluated at the Emergency Department at Parkview Randallia Hospital. When an individual presents to PBH after hours seeking psychiatric care, the on-duty security officer instructs the individual to go to the Emergency Department at Parkview Randallia Hospital.

On December 20, 2015, the Plaintiff presented himself after hours to PBH and requested to be admitted because he was experiencing suicidal thoughts. Previously, the Plaintiff had been treated at PBH for symptoms of schizophrenia, including delusional thoughts, paranoia, and depressive mood. The on-duty security officer, Lakisha Houston, directed the Plaintiff to the Emergency Department at Parkview Randallia Hospital for immediate medical assistance. The Plaintiff subsequently left and drove his vehicle into an apartment complex in an attempt to commit suicide.

At approximately 3:00 AM, officers from the Fort Wayne Police Department were dispatched to the scene. Upon their arrival, responding officers overheard the Plaintiff repeatedly stating, "I just wanted to die, that's all I'm trying to do is kill myself, the voices are telling me to do this" and stating that he believed that someone was trying to kill him. The Plaintiff was subsequently taken to the Emergency Department at Parkview Hospital's main campus. Due to his multiple suicidal statements and agitated behavior, the Plaintiff was detained at the hospital until December 24, 2015.

Following the incident on December 20, 2015, PBH re-examined its policy regarding after-hours presentment by individuals seeking emergency attention and instituted a new practice

whereby PBH would arrange for such a person to be transported from PBH to the Emergency Department at Parkview Randallia Hospital.

## STANDARD OF REVIEW

Summary judgment is proper where the evidence of record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute that precludes summary judgment. *Id.* at 324. "[A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material issue, then the Court must enter summary judgment against it. *Id.*

## ANALYSIS

The Defendants assert that summary judgment is warranted because: (1) the Plaintiff has failed to establish a prima facie case under Title III of the ADA, (2) PBH was not subject to the EMTALA and that the Plaintiff should have known of the separate hospital campus with a dedicated emergency department, and (3) the Court lacks jurisdiction over the Plaintiff's negligence claims, which must proceed before the Indiana Department of Insurance pursuant to Indiana Code § 34-18-8-4. The Court considers each argument in turn.

## A. Title III of the ADA

Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. Specifically, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "The core meaning of this provision, plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility . . . that is open to the public cannot exclude disabled persons from entering the facility." *Doe v. Mut. Of Omaha Ins., Co.*, 179 F.3d 557, 559 (7th Cir. 1999). A prima facie case under Title III of the ADA consists of three elements: (1) the plaintiff was disabled within the meaning of the ADA; (2) the defendant owned, leased, or operated a place of public accommodation; and (3) the plaintiff was discriminated against on the basis of his or her disability. 42 U.S.C. § 12188.

Discrimination includes the "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities" and the "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(ii)–(iii). There is no dispute that the Plaintiff was disabled within the meaning of the ADA and that PBH owned, leased, or operated a place of public accommodation. The dispute is whether the Defendants discriminated against the Plaintiff based on his disability.

The Defendants assert that the Plaintiff cannot establish a prima facie case under Title III of the ADA and that his claim therefore fails as a matter of law. Specifically, the Defendants assert that the Plaintiff cannot establish that the Defendants discriminated against him on account of his disability. The Plaintiff alleges that PBH employed a discriminatory policy or practice that failed to provide him with reasonable and necessary services and accommodations.

Discriminatory denial of entrance to a place of accommodation is actionable under Title III of the ADA. *Shott v. Vedder Price, P.C.*, 527 F. App'x 562, 563 (7th Cir. 2013). Title III of the ADA specifically prohibits "utiliz[ing] standards or criteria or methods of administration . . . that have the effect of discriminating on the basis of disability" or "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability." 42 U.S.C. §§ 12182(b)(1)(D), (b)(2)(A)(i).

The Defendants assert that the decision to send the Plaintiff to another facility was based on the type of treatment he sought and time he presented, i.e., after-hours emergency care, not on his disability. PBH's policy categorically turned away every person who presented after hours regardless of disability. The Plaintiff has presented no evidence that a non-disabled individual would have had access to services that were refused to him on account of that disability. Therefore, the Plaintiff cannot establish a prima facie case of discrimination, and the Court will grant summary judgment as to the Plaintiff's ADA claim.

**B.     The Plaintiff's Claim Under the EMTALA**

Congress enacted the EMTALA to prevent hospitals from engaging in "dumping" for patients who are unable to pay for care. *Masgruder v. Jaser Cty Hosp.*, 243 F. Supp. 2d 886, 890 (N.D. Ind. 2003). The EMTALA imposes two duties commonly referred to as the "screening

requirement" and the "stabilization requirement." As to the screening requirement, the statute provides:

> In the case of a hospital that has a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists.

42 U.S.C. § 1395dd(a). As to the stabilization requirement, "the patient may not be transferred to another hospital or discharged until he or she has received stabilizing treatment." *Stewart v. Indiana*, No. 1:16-CV-138, 2016 WL 4095581, at *1 (N.D. Ind. Aug. 2, 2016) (quoting *Curry v. Advocate Bethany Hosp.*, 204 F. App'x 553, 556 (7th Cir. 2006)). An individual with an emergency medical condition that is psychiatric in nature is considered stabilized "when he/she is no longer considered to be a threat to him/herself or to others." *Thomas v. Christ Hosp. and Med. Ctr.*, 328 F.3d 890, 893 (7th Cir. 2003). "However, if an individual does not 'come to the emergency department' of a given hospital under the meaning of EMTALA, the hospital owes no duty to stabilize the patient." *Beller v. Health & Hosp. Corp.*, No. 1:03-CV-889, 2011 WL 5395298, at *1 (S.D. Ind. Nov. 4, 2011) (quoting *McCullum v. Silver Cross Hosp.*, No. 99 C 4327, 2001 WL 1516731, at *3 (N.D. Ill. Nov. 28, 2001)).

The requirement that individuals with emergency medical conditions must "come to" a hospital's "emergency department" is broadly construed. An individual meets this requirement where s/he appears on "hospital property" even if it is property "other than the dedicated emergency department." 42 C.F.R. § 489.24(b)(2); *see also Morales v. Sociedad Espanola De Auxilio Mutuo*, 524 F.3d 54, 57–61 (1st Cir. 2008). That is, the EMTALA protects an individual who "present[s] elsewhere on hospital property in an attempt to gain access to the hospital for

emergency care (that is, at a location that is on hospital property but is not part of a dedicated emergency department)." 68 Fed. Reg. 53,222 at 53,228 (Sept. 9, 2003).

The statute also defines "emergency department" broadly. An emergency department is "any department or facility of the hospital, regardless of whether it is located on or off the main hospital campus, that meets at least one of the [enumerated] requirements," which includes being licensed by the state as an emergency department, being "held out to the public (by name, posted signs, advertising, or other means) as a place that provides care of emergency medical conditions on an urgent basis without requiring a previously scheduled appointment," or, having one-third of its outpatient visits during the previous year be for emergency treatment. 42 C.F.R. § 489.24.

The parties dispute whether the Plaintiff presented himself to an emergency department as defined by the statute. The Defendants admit that Parkview Randallia Hospital's "main campus" satisfies the EMTALA's definition of a dedicated emergency department. However, the Defendants insist that PBH does not have a dedicated emergency department because it does not meet any of the enumerated requirements in the statutes, i.e., it is not licensed by the state as an emergency department, it does not hold itself out as an emergency department, and during the previous year, one-third of its outpatient visits were not for the treatment of emergencies. However, what the Plaintiff points out, and what the Defendants fail to acknowledge, is that the dedicated emergency department need not be on the same campus as the hospital to which an individual seeking care presents himself. Consequently, the Defendants have failed to come forward with evidence that they do not have an emergency department as defined by the statute and therefore have not met their burden of proof on summary judgment.

The Defendants also argue that the Plaintiff should have known to present himself at Parkview Randallia Hospital because he had previously presented, or was directed to go, there

7

for emergency care and treatment. Neither party has explained to the Court why what the Plaintiff "should have known" about the location of an emergency department is relevant to the question of whether he did, in fact, present himself at an emergency department as it is statutorily defined. If presentation to PBH is indeed sufficient as defined by the statute, then the Plaintiff met the EMTALA's statutory requirements, and what the Plaintiff "should have known" is irrelevant.

Therefore, the Court denies the Defendants' Motion for Summary Judgment as to the Plaintiff's EMTALA claim.

C.  **The Defendants' Motion to Dismiss the Plaintiff's Negligence Claim**

The Defendants argue that the Court lacks jurisdiction over the Plaintiff's negligence claims because the Plaintiff was required to proceed before the Indiana Department of Insurance, pursuant to the Indiana Medical Malpractice Act ("the MMA"), codified at Indiana Code § 34-18-8-4. The MMA provides that malpractice is "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Cod. § 34-18-2-18. A "health care provider" is defined as "a person, partnership, corporation, professional corporation, facility or institution licensed or legally authorized by this state to provide health care of professional services as a physician, psychiatric hospital, hospital, . . . or an office, employee, or agent thereof acting in the course and scope of this employment." Ind. Cod. § 34-18-2-14. "Health care" is defined as "an act of treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind. Cod. § 34-18-2-13.

8

A court determines whether the MMA is applicable to a claim by reviewing the substance of the claim. *Doe by Roe v. Madison Ctr. Hosp.*, 652 N.E.2d 101, 104 (Ind. Ct. App. 1995). The test for determining whether a claim sounds in medical malpractice is "whether the claim is based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services." *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006) (internal quotations omitted). When a court determines that a claim sounds in medical malpractice, the claim "may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . . and (2) an opinion is given by the panel." Ind. Cod. § 34-18-8-4.

The Defendants argue that the Plaintiff's claim sounds in malpractice because his alleged injury arose when Houston "refused all treatment and services." The Defendants contend that the decision of whether or not to admit a patient for treatment belonged to PBH, not Houston, so the refusal of treatment is a malpractice claim that must proceed before the Medical Review Panel.

The Plaintiff responds that he is accusing only Houston of negligence, not PBH, and alleges instead that PBH is responsible under the theory of respondeat superior. "The fact that the alleged misconduct occurs in a healthcare facility does not, by itself, make the claim one for malpractice." *Madison Ctr.*, 853 N.E.2d at 1288. Thus, the Plaintiff argues, Houston, as a security guard, was not acting in a professional capacity as a provider of medical services.

However, the Court need not decide this issue because the Defendants have not demonstrated that the Plaintiff is a "patient" within the meaning of the MMA. The MMA defines a "patient" as "an individual who receives or should have received health care from a health care provider, under a contract, express or implied . . . ." Ind. Cod. § 34-18-2-22. "[A] physician-patient relationship is necessary to bring claims under the procedures of the MMA." *Thompson v.*

9

*Cty. Of Indianapolis*, No. 1:15-CV-1712, 2016 WL 4541434, at *3 (S.D. Ind. Aug. 31, 2016) (citing *Weldon v. Universal Reagents, Inc.*, 714 N.E.2d 1104, 1110 (Ind. Ct. App. 1999)). Whether a physician-patient relationship exists is a question of law. *Rhoades v. Penn-Harris-Madison School Corp.*, No. 3:05 CV 586, 2006 WL 2788588, at *3 (N.D. Ind. Sept. 26, 2006) (citing *Dixon v. Siwy*, 661 N.E.2d 600, 607 (Ind. Ct. App. 1996)). "The relation of 'physician and patient' is created when the professional services of a physician are accepted for a purpose of medical or surgical treatment . . . wherein patient knowingly seeks assistance of a physician and physician knowingly accepts him as a patient." *Jennings v. Case*, 10 S.W.3d 625, 628 (Tenn. Ct. App. 1999) (internal citation omitted). *See also Davis v. Weiskopf*, 439 N.E.2d 505, 510 (Ill. App. Ct. 1982) ("a physician's duty of care arises only upon the creation of a physician-patient relationship based upon contract, the existence of which is a prerequisite to an action for medical malpractice or negligence.") (collecting cases); *Childs v. Weis*, 440 S.W.2d 104, 107 (Tex. Ct. App. 1969) ("Since it is unquestionably the law that the relationship of physician and patient is dependent upon contract, either express or implied, a physician is not to be held liable for arbitrarily refusing to respond to a call of a person even urgently in need of medical or surgical assistance . . . ."); *Agnew v. Parks*, 172 343 P.2d 118, 123 (Cal. Ct. App. 1959) ("Even the Hippocratic Oath . . . assumes a pre-existing relationship of patient and physician . . . .").

"[A]n act of some kind must be performed by the physician for the patient's benefit in order for a physician-patient relationship to develop." *Dixon*, 661 N.E.2d at 607. The Plaintiff was not admitted to PBH on December 20, 2015, and no act was performed by a physician for his benefit. The Defendants otherwise have produced no evidence of an express or implied contract between the parties regarding medical services. Without a physician-patient relationship,

the Plaintiff's claims are not subject to the MMA. Thus, the Court will not dismiss the Plaintiff's negligence claim.

## CONCLUSION

For these reasons, the Court GRANTS IN PART the Defendants' Motion [ECF No. 43] as to the ADA claim and DENIES IN PART as to the EMTALA and Negligence Claims.

SO ORDERED on October 20, 2017.

                                           s/ Theresa L. Springmann
                                           CHIEF JUDGE THERESA L. SPRINGMANN
                                           UNITED STATES DISTRICT COURT